IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **L-J-P-L-**, an adult,<br><br>        Petitioner,<br><br>        v.<br><br>**CAMMILLA WAMSLEY**, Seattle Field Office Director, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations; **TODD LYONS**, Acting Director of U.S. Immigration and Customs Enforcement; **U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**; **KRISTI NOEM**, Secretary of the U.S. Department of Homeland Security; **U.S. DEPARTMENT OF HOMELAND SECURITY**; and **PAMELA BONDI**, Attorney General of the United States,<br><br>        Respondents. | Case No. 3:25-cv-01390-IM<br><br>Agency No. AXXX-XXX-629<br><br>**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Stephen W. Manning, Tess Hellgren, Jordan Cunnings, & Nelly Garcia Orjuela, Innovation Law Lab, 333 SW 5th Avenue, Suite 200, Portland, OR 97204. Attorneys for Petitioner.

Scott E. Bradford, United States Attorney, and Susanne Luse, Ariana N. Garousi, & Sarah E. Feldman, Assistant United States Attorneys, 1000 SW 3rd Avenue, Suite 600, Portland, OR 97204. Attorneys for Respondents.

PAGE 1 – OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

**IMMERGUT, District Judge.**

Before this Court is a Petition for Writ of Habeas Corpus filed under 28 U.S.C. § 2241. ECF 1. The limited issue a district court must decide on a habeas petition is whether the petitioner is being lawfully detained. The task of a district court judge in all cases is to apply the law as written to the facts of the particular case. Until Congress enacts long-overdue changes to our Nation's immigration laws, this Court is bound to apply existing immigration laws to the facts and circumstances of this case. Under existing immigration laws, once an undocumented immigrant has been lawfully removed pursuant to an order of removal, that person has no right to illegally reenter the country and remain out of custody. The Department of Homeland Security ("DHS") has the discretion to reinstate a prior order of removal, and if it does reinstate the order of removal, detention is mandatory. That is what happened here. Consequently, as further explained below, this Court has no choice but to conclude that, under existing immigration laws, Petitioner's detention is lawful.

Petitioner L-J-P-L-,[1] a Guatemalan citizen, first illegally entered the United States on March 4, 2009. Petitioner was assigned an Alien Registration Number, or "A-number," ending in 394. An A-number is a unique number that DHS assigns to a noncitizen entering the United States. An immigration judge entered a final order of removal against Petitioner under the A-number ending in 394, and Petitioner was removed on March 17, 2009. Petitioner illegally entered the United States again on May 14, 2014, and was removed a second time.

Petitioner illegally reentered the United States a third time on February 14, 2024. This time, he was assigned a different A-number ending in 629 and released into the United States on

---

[1] After analyzing the factors in *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000), this Court granted Petitioner leave to proceed anonymously under his initials. Order to Show Cause, ECF 4 ¶ 1.

an Order of Release on Recognizance pursuant to 8 U.S.C. § 1226(a). The next day, U.S. Customs and Border Protection initiated removal proceedings against Petitioner, under the 629 A-number, pursuant to 8 U.S.C. § 1229a. Petitioner timely applied for asylum on February 11, 2025.

On August 7, 2025, a vehicle in which Petitioner was a passenger was stopped and Petitioner was detained. Arresting officers determined that Petitioner had been assigned two A-numbers: In addition to the number ending in 629, Petitioner had previously been assigned the A-number ending in 394. Under the 394 A-number, Petitioner had two prior removals, one in 2009 and one 2014, and a prior final order of removal in 2009. On the same day Petitioner was arrested and booked at an ICE facility, Respondents reinstated Petitioner's prior order of removal pursuant to 8 U.S.C. § 1231(a)(5), triggering mandatory detention under 8 U.S.C. § 1231(a)(2). As required by 8 C.F.R. § 241.8, Respondents provided Petitioner with notice of their decision to reinstate his prior final order of removal and an opportunity to contest the reinstatement, which Petitioner declined to do.

The question presented in this case is whether Respondents violated Petitioner's due process rights by reinstating his prior order of removal, which triggered mandatory detention, despite his prior order of release on recognizance. Based on the unique facts here, this Court concludes that Petitioner has not met his burden of showing that Respondents' reinstatement of his prior order of removal was unlawful. Because Respondents have the authority to reinstate a prior order of removal under 8 U.S.C. § 1231(a)(5), which requires mandatory detention, *id.* § 1231(a)(2), the Petition for Writ of Habeas Corpus, ECF 1, is denied.

Petitioner has expressed a fear of returning to Guatemala for fear of persecution there by the same people who murdered his brother in 2003. In light of Petitioner's expression of fear,

and the requirement in 8 C.F.R. § 241.8(e) that Petitioner "shall be immediately referred to an asylum officer" for a reasonable fear interview, Respondents are ordered to notify this Court of the date that the interview is scheduled within seven days of the issuance of this Order.

## BACKGROUND

A. Legal Background

### 1. Detention or release upon entry under 8 U.S.C § 1226(b)

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., governs the removal of individuals living unlawfully in the United States. *See Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2280 (2021). When a person enters the country and is deemed "inadmissible" under 8 U.S.C. § 1182, the government can either arrest and detain the person, or release the person pending a decision on whether they may be "removed" or deported. 8 U.S.C § 1226(a). The government may revoke a person's order on release pursuant to 8 U.S.C § 1226(b) and 8 C.F.R. § 1236.1(c)(9).

Individuals applying for admission into the United States are processed either through expedited removal proceedings under 8 U.S.C § 1225(b)(1) or through regular removal proceedings under 8 U.S.C § 1229a. *See Innovation L. Lab v. McAleenan*, 924 F.3d 503, 507 (9th Cir. 2019). An individual placed in § 1229a removal proceedings is issued a Notice to Appear, which charges the individual with inadmissibility and identifies the grounds for inadmissibility. *Id.* at 508–09. An immigration officer then sets a date for a hearing on the issue before an immigration judge. *Id.* at 509.

### 2. Reinstatement of prior order of removal under 8 U.S.C. § 1231(a)

The INA "provides for the expedited removal of an alien who was previously subject to a removal order but returned illegally to the United States." *Andrade-Garcia v. Lynch*, 828 F.3d 829, 831 (9th Cir. 2016) (citing 8 U.S.C. § 1231(a)(5)). The prior order of removal is reinstated

from its original date. *Alcala v. Holder*, 563 F.3d 1009, 1013 (9th Cir. 2009). Although ICE has discretion to reinstate a prior order of removal, rather than initiate new removal proceedings, the decision to reinstate a prior order of removal "is neither 'automatic' nor 'obligatory.'" *Morales de Soto v. Lynch*, 824 F.3d 822, 825 (9th Cir. 2016) (citation omitted).

When ICE exercises its discretion to reinstate a prior order of removal, "[t]he alien has no right to a hearing before an immigration judge." 8 C.F.R. § 241.8(a). ICE must, however, follow other procedural steps outlined in 8 C.F.R. § 241.8. First, an immigration officer "must (1) obtain the prior order related to the alien, (2) confirm that the alien under consideration is the same alien who was previously removed or voluntarily departed, and (3) confirm that the alien unlawfully reentered the United States." *Alcala*, 563 F.3d at 1013 (citing 8 C.F.R. § 241.8(a)). If these requirements are met, the officer must then "provide the alien with written notice of the determination and give the alien an opportunity to make a statement contesting the determination before an immigration officer." *Id.* (citing 8 C.F.R. § 241.8(b)). If the requirements of 8 C.F.R. § 241.8(a) and 8 C.F.R. § 241.8(b) have been satisfied, the individual is removable under the previous order of removal. 8 C.F.R. § 241.8(c); *Ortiz-Alfaro v. Holder*, 694 F.3d 955, 956 (9th Cir. 2012). Detention is mandatory upon reinstatement of a prior order of removal. 8 U.S.C § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien."); *Arango Marquez v. Immigr. & Naturalization Serv.*, 346 F.3d 892, 898 (9th Cir. 2003).

"[I]ndividuals subject to reinstated removal orders may not apply for asylum relief." *Perez-Guzman v. Lynch*, 835 F.3d 1066, 1074 (9th Cir. 2016); *see* 8 U.S.C § 1231(a)(5) ("[T]he alien is not eligible and may not apply for any relief under this chapter."). If, however, the individual whose prior order of removal has been reinstated expresses fear of returning to the country designated in that order, the person "shall be immediately referred to an asylum officer

PAGE 5 – OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

for an interview to determine whether the alien has a reasonable fear of persecution or torture." 8 C.F.R. § 241.8(e). "If the officer decides that the alien does have a reasonable fear of persecution or torture, the case is referred to an immigration judge . . . 'for full consideration of the request for withholding of removal only.'" *Ayala v. Sessions*, 855 F.3d 1012, 1015 (9th Cir. 2017) (citing 8 C.F.R. § 208.31(e)). If "the asylum officer decides that the alien has not established a reasonable fear of persecution or torture, then the alien is entitled to appeal that determination to an [immigration judge]." *Id.* at 1015–16 (citation omitted).

**B. Factual Background**

On March 4, 2009, an immigration judge ordered Petitioner removed from the United States under the A-number ending in 394. Notice of Intent/Decision to Reinstate Prior Order, ECF 15-1, Ex. A; Record of Deportable/Inadmissible Alien, ECF 15-3, Ex. C at 4; DHS's Motion to Dismiss, ECF 28-1, Ex. C at 2. Petitioner was removed from the United States on March 17, 2009. Notice of Intent/Decision to Reinstate Prior Order, ECF 15-1, Ex. A; Record of Deportable/Inadmissible Alien, ECF 15-3, Ex. C at 4.

On May 14, 2014, Petitioner illegally reentered the United States and was removed a second time. Record of Deportable/Inadmissible Alien, ECF 15-3, Ex. C at 4. Again, this removal was under the A-number ending in 394. Declaration of Parker Bell ("Bell Decl."), ECF 16 ¶¶ 4, 9.

On February 14, 2024, Petitioner unlawfully entered the United States near Nogales, Arizona. Bell Decl., ECF 16 ¶ 4. Upon entry on this date, Respondents arrested and detained Petitioner. Petitioner was inexplicably assigned a new A-number ending in 629, *id.*, even though

PAGE 6 – OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

an A-number is supposed to be a "unique seven-, eight- or nine-digit number"[2] assigned by DHS only once to any individual. According to a sworn declaration submitted by Respondents, at that time, Petitioner "was believed by Border Patrol to have had no prior entries or removals from the United States." *Id.*

On February 15, 2024, Respondents initiated removal proceedings against Petitioner under 8 U.S.C. § 1229a. United States Customs and Border Protection ("CBP") issued Petitioner a Notice to Appear ("NTA") before the Immigration Court on November 18, 2026. *Id.* ¶ 7. The NTA charged Petitioner under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled, or as having arrived in the United States at any time or place other than designated by the Attorney General. *Id.* ¶ 5. Petitioner was personally served with the NTA. Bell Decl., ECF 16 ¶ 5. He was also served with oral notice in Spanish of the time and place of his immigration court hearing. *Id.* He signed the certificate of service acknowledging personal service of the NTA. *Id.*

DHS then released Petitioner from its custody on an Order of Release on Recognizance pursuant to 8 U.S.C. § 1226. Declaration of Christopher Sica ("Sica Decl."), ECF 26 ¶ 4; Order of Release on Recognizance, ECF 24-1, Ex. B. As part of Petitioner's conditions of release, he was ordered to report to DHS or the Office of Enforcement and Removal Operations ("ERO") as directed. Sica Decl., ECF 26 ¶ 4. Petitioner reported to the Eugene ERO on several dates from June 2024 to April 2025, as directed. *Id.*

During the period of release, almost a year later, on February 11, 2025, Petitioner timely filed an I-589 Application for Asylum and for Withholding of Removal before the Seattle

---

[2] *A-Number/Alien Registration Number/Alien Number (A-Number or A#)*, U.S. Citizenship and Immigration Services, https://www.uscis.gov/glossary-term/50684 [https://perma.cc/7B5Z-CG8H (archived Aug. 22, 2025)].

PAGE 7 – OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Immigration Court. Asylum Application, ECF 28, Ex. A. Petitioner's asylum application asserted that he fled Guatemala after he was targeted by the people who had murdered his brother in 2003. *Id.* at 5–6. The application listed an A-number ending in 629, *id.* at 1–2, which was the same A-number Petitioner was assigned on February 14, 2024, Bell Decl., ECF 16 ¶ 4. Petitioner's asylum application did not mention that he had two prior removals, a prior order of removal, or that he had a different A-number ending in 394. Asylum Application, ECF 28, Ex. A. That I-589 Asylum Application is still pending. Sica Decl., ECF 26 ¶ 9.

On August 7, 2025, Petitioner was a passenger in a vehicle that was stopped by immigration authorities. Bell Decl., ECF 16 ¶ 9. Officers confirmed Petitioner is a citizen of Guatemala and that he was in the United States without permission. *Id.* A records check revealed that Petitioner had two A-numbers, one ending in 629 and another ending in 394. *Id.* The A-number ending in 394 had two prior removals in 2009 and 2014, respectively, and a prior order of removal entered on March 4, 2009. *Id.* Petitioner has not disputed that he is the same person assigned both A-numbers or that he has the prior order of removal.

Petitioner was arrested and transported to the Portland ERO for processing. *Id.* A full set of fingerprints were taken and confirmed Petitioner's identity and the two A-numbers. *Id.* Petitioner was booked into the Northwest ICE Processing Center in Tacoma, Washington, where he remains in custody. *Id.* ¶ 10.

That same day, on August 7, 2025, DHS served Petitioner with form I-871, Notice of Intent/Decision to Reinstate Prior Order. *Id.* ¶ 11; Notice of Intent/Decision to Reinstate Prior Order, ECF 15-1, Ex. A. Petitioner refused to sign the "acknowledgement and response" portion of the Notice or to make a statement contesting the reinstatement determination. Notice of Intent/Decision to Reinstate Prior Order, ECF 15-1, Ex. A.

PAGE 8 – OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

On August 12, 2025, DHS moved to dismiss the removal proceedings under A-number 629, stating it was reinstating Petitioner's prior order of removal pursuant to 8 U.S.C. § 1231(a)(5). Bell Decl., ECF 16 ¶ 12; DHS's Motion to Dismiss, ECF 28-1, Ex. C at 2 ("DHS has determined that it will reinstate the respondent's prior order of removal pursuant to INA § 241(a)(5)."). The motion to dismiss is still pending in the immigration court.

Respondents state that Petitioner will be referred for a reasonable fear interview as required by 8 C.F.R. § 241.8(e), Bell Decl., ECF 16 ¶ 13, but that the interview has not yet been scheduled, Respondent's Supplemental Information, ECF 23 at 3.

## C. Procedural History of Petitioner's Writ of Habeas Corpus

Petitioner filed the Writ of Habeas Corpus on the morning of August 7, 2025. Petition for Writ of Habeas Corpus ("Pet."), ECF 1. The Petition seeks Petitioner's release from detention based on three counts. Counts 1 and 2 allege violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). *Id.* ¶¶ 47–59. As to these counts, Petitioner alleges Respondents categorically revoked Petitioner's conditional release "without consideration of [Petitioner's] individualized facts and circumstances" as he alleges is required by 8 U.S.C. § 1226(b) and 8 C.F.R. § 1236.1(c)(9). *Id.* ¶ 51–53, 58–59. Count 3 alleges a violation of the Due Process Clause of the Fifth Amendment to the United States Constitution based on a similar theory that Respondents "arbitrarily" revoked Petitioner's release without an "individualized determination of whether he is a safety or flight risk, in violation of due process." *Id.* ¶ 64.

This Court entered an Order to Show Cause in the afternoon of August 7, 2025, ordering Respondents to respond and not move Petitioner out of the District of Oregon. ECF 4. Respondents notified the Court that Petitioner had been transferred out of this District into Washington state around 5:00 p.m., and that Petitioner had been transported to the Tacoma ICE detention center because there is no ICE detention facility in Oregon. ECF 6 at 2. In response to

PAGE 9 – OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

this Court's inquiry, Respondents reported to this Court that they did not receive this Court's Order to Show cause until the evening of August 7, 2025, after Petitioner had already been transferred to Washington. The parties filed a Joint Statement on Venue, agreeing that venue was proper in the District of Oregon because that is where Petitioner was located when he was originally detained. ECF 10.

Respondents filed a response to the Petition, Response ("Resp."), ECF 14, and accompanying exhibits and declarations. They subsequently filed supplemental information as ordered by the Court, ECF 23. Petitioner filed a Reply, ECF 29, and on August 18, 2025, this Court held a hearing, ECF 37.

## STANDARDS

A habeas petitioner must demonstrate that his custody violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2241(c)(3). The petitioner bears the burden of proving that his detention is unlawful by a preponderance of the evidence. *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In . . . federal habeas proceedings, it is the petitioner who bears the burden of proving his case.").

## DISCUSSION

The issue presented in this case is whether Respondents' reinstatement of Petitioner's prior order of removal under 8 U.S.C. § 1231(a), after Petitioner had been placed in 8 U.S.C. § 1229a removal proceedings and released under 8 U.S.C. § 1226(a), was unlawful. Petitioner's habeas petition asserts Respondents failed to comply with due process by revoking Petitioner's order of release under § 1226(a) without making an individualized determination based on the facts and circumstances of Petitioner's case, in violation of due process and the APA. Pet., ECF 1 ¶¶ 51, 58–59, 64. In response, Respondents state that once ICE determined Petitioner had

PAGE 10 – OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

previously been removed twice, they reinstated Petitioner's prior order of removal, which requires detention under 8 U.S.C. § 1231(a)(2)(A). Resp., ECF 14 at 2.

This Court concludes that Respondents have lawfully reinstated Petitioner's prior order of removal under 8 U.S.C. § 1231(a)(5) by following all the required procedures under 8 C.F.R. § 241.8. Petitioner's position that Respondents are unlawfully revoking Petitioner's prior release under 8 U.S.C. § 1226(b) is incorrect. Respondents are not seeking to revoke Petitioner's release; instead, they are reinstating his prior order of removal, a wholly separate procedure that is "not a species of removal." *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 490 (9th Cir. 2007) (en banc). Since detention is statutorily required when the government reinstates a prior order of removal, 8 U.S.C. § 1231(a)(2), this Court concludes that Petitioner has not met his burden of establishing by a preponderance of evidence that Respondents are detaining him unlawfully. Petitioner's habeas petition, ECF 1, is denied.

**A. Jurisdiction**

This Court begins by assessing its jurisdiction in this case. Under 28 U.S.C. § 2241(c)(3), the Court has authority to grant a petition for writ of habeas corpus if the petitioner demonstrates that he is being held in custody "in violation of the Constitution or laws or treaties of the United States." "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

Petitioner seeks immediate release from custody, which he contends violates the Constitution of the United States. Neither party contests jurisdiction. Thus, Petitioner properly invokes this Court's habeas jurisdiction.

B. **Reinstatement of Prior Order of Removal**

Next, this Court assesses the merits of the habeas petition and concludes that Respondents have lawfully detained Petitioner based on their reinstatement of his prior order of removal.[3] This Court begins by explaining that a reinstatement of a prior order of removal is not a removal proceeding. This Court then reviews the unique facts of this case, concluding that Respondents lawfully reinstated the prior final order of removal once they learned Petitioner had the 2009 order of removal and two prior removals under a different A-number. Next, this Court considers whether Respondents followed the necessary procedures for reinstating Petitioner's prior order of removal and concludes that Respondents have. Having properly reinstated Petitioner's prior order of removal, which necessitates Petitioner's detention, Petitioner's detention is lawful.

1. **Reinstatement of prior order of removal is not a removal proceeding**

8 U.S.C. § 1231(a)(5) grants the government authority to reinstate a noncitizen's prior order of removal. That provision states:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, **under an order of removal**, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply

---

[3] Petitioner argues for the first time on reply that Respondents unlawfully seized him "after any reasonable suspicion had been dispelled that he was in the country unlawfully," ECF 29 at 1, and that "Respondents unlawfully denied L-J-P-L- access to counsel," *id.* Petitioner does not allege a violation of any other constitutional right besides due process in his Petition, ECF 1.

Even if these violations occurred, they are not appropriately raised in a habeas petition, which considers the lawfulness of a continuing detention. As the Supreme Court explained in *United States ex rel. Bilokumsky v. Tod*, "[a] writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment." 263 U.S. 149, 158 (1923) (citation omitted). Release is therefore not the appropriate remedy for these alleged violations.

for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

That same statute provides that, "[d]uring the removal period, the Attorney General *shall* detain the alien." 8 U.S.C. § 1231(a)(2)(A) (emphasis added).

Reinstatement of a prior order of removal under § 1231(a) is not a procedure for determining whether a noncitizen may be admitted to or removed from the United States. *Morales-Izquierdo*, 486 F.3d at 491 (explaining that "reinstatement is a separate procedure, not a species of removal"). That determination has already been made in the prior removal proceeding that produced the removal order that the government is reinstating. As the statute explicitly states, reinstatement is not an opportunity to reopen or review the prior order of removal. Reinstatement is simply an administrative procedure reinstating a determination that has already been made. The Ninth Circuit has characterized it as a "summary procedure" that "can be performed like any other ministerial enforcement action." *Morales-Izquierdo*, 486 F.3d at 491. "Reinstatement of a prior removal order—regardless of the process afforded in the underlying order—does not offend due process because reinstatement of a prior order does not change the alien's rights or remedies." *Id.* at 497.

2. **Respondents reinstated Petitioner's prior order of removal once they learned he had two prior removals and one prior order of removal under a different A-number**

In this case, Respondents reinstated Petitioner's prior order of removal on August 7, 2025, the day they discovered Petitioner had *another* A-number with a 2009 final order of removal and two prior removals in 2009 and 2014.

Somehow and at some point, Petitioner was assigned two A-numbers, even though, as noted earlier, they are meant to be a "unique seven-, eight- or nine-digit number"[4] assigned by DHS and are, "by definition, a means of identification of an actual individual because they are assigned to a single person and, once used, are not reassigned to anyone else." *United States v. Sosa-Carabantes*, 561 F.3d 256, 258 n.3 (4th Cir. 2009) (internal quotation marks and citations omitted). The declaration of Parker Bell, a Supervisory Detention and Deportation Officer with DHS since 2008, states that:

> On or about February 14, 2024, Petitioner entered the United States at an unknown place without inspection, near Nogales, Arizona. He was assigned [an A-number ending in] 629 and *was believed by Border Patrol to have had no prior entries or removals from the United States*.

Bell Decl., ECF 16 ¶ 4 (emphasis added). As ICE would later come to find through a records check, however, Petitioner had already been assigned another A-number ending in 394 under which he had previously been removed twice, including one final order of removal. *Id.* ¶ 9. No evidence suggests that Petitioner told DHS that he had previously been removed twice. When asked on his February 11, 2025, asylum application to "[l]ist each entry into the U.S. beginning with your most recent entry," Petitioner listed only his entry on February 14, 2024. Asylum Application, ECF 28, Ex. A at 2.

The evidence in the record makes clear that Respondents learned of Petitioner's prior removals on the date of Petitioner's arrest on August 7, 2025. *See* Record of Deportable/Inadmissible Alien, ECF 15-3, Ex. C at 3–4; Bell Decl., ECF 16 ¶ 9. That same day, Respondents took Petitioner's fingerprints and confirmed he was the same person with the other

---

[4] *A-Number/Alien Registration Number/Alien Number (A-Number or A#)*, U.S. Citizenship and Immigration Services, https://www.uscis.gov/glossary-term/50684 [https://perma.cc/7B5Z-CG8H (archived Aug. 22, 2025)].

PAGE 14 – OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

A-number. Bell Decl., ECF 16 ¶ 9. Petitioner does not challenge that he is the same person as the person assigned the 394 A-number. Respondents then served Petitioner with a Notice of Intent/Decision to Reinstate Prior Order. *Id.* ¶ 11. Based on these facts, the only plausible conclusion is that Respondents sought to reinstate Petitioner's prior order of removal as soon as they learned he had another A-number with two removals and one final order of removal.[5]

### 3. Respondents complied with all procedural requirements to reinstate Petitioner's prior order of removal

As explained above, reinstatement of a prior order of removal is a simple administrative act that restores an already-adjudicated removal. The regulation implementing § 1231, 8 C.F.R. § 241.8(a), sets forth the procedures the government must follow to properly reinstate a prior order of removal. First, an immigration officer must verify three facts: (1) whether the alien has been subject to a prior order of removal; (2) the identity of the alien; and (3) whether the alien unlawfully reentered the United States. Second, if an officer determines those three factual predicates have been met, the officer then has to provide notice and an opportunity to respond as specified by regulation:

> [The officer] shall provide the alien with written notice of his or her determination. The officer shall advise the alien that he or she may make a written or oral statement contesting the determination. If the alien wishes to make such a

---

[5] Petitioner points to evidence in the record that the officer who processed Petitioner's entry on February 14, 2024, performed a "biometric screening." Reply, ECF 29 at 4. The February 15, 2024, Order of Release on Recognizance shows that an immigration officer checked boxes for "Biometrics Submitted" and "Record Check or Additional Checks." ECF 32-1, Ex. B at 2. The Court cannot determine from this record what, if anything, the officer reviewed, let alone that the officer saw Petitioner's 394 A-number or the prior order of removal or two prior removals. The form also does not appear to have a place where the officer could mark whether the individual has a prior order of removal. In light of the contrary declaration that Petitioner "was believed by Border Patrol to have had no prior entries or removals from the United States," Bell Decl., ECF 16 ¶ 4, as well as the fact that A-numbers are uniquely assigned identifying numbers for an individual, this Court concludes that the more reasonable inference is that Respondents did not know about Petitioner's other A-number or prior removals in February 2024.

statement, the officer shall allow the alien to do so and shall consider whether the alien's statement warrants reconsideration of the determination.

8 C.F.R. § 241.8(b). A person subject to reinstatement "has no right to a hearing before an immigration judge." *Id.* § 241.8(a).

### a.  Respondents complied with the requirements in 8 C.F.R. § 241.8

Based on the exhibits, Respondents appear to have complied with all the requirements of 8 C.F.R. § 241.8. The Notice of Intent/Decision to Reinstate Prior Order reflects that an officer determined all three factual requirements were met, provided Petitioner with notice of Respondents' intent to reinstate his prior order of removal, and notified Petitioner that he "may contest this determination by making a written or oral statement to an immigration officer." ECF 15-1. Petitioner was given an opportunity to contest Respondents' determination but declined. *See id.* Petitioner has not demonstrated that Respondents failed to comply with the requirements of 8 C.F.R. § 241.8.

### b.  8 U.S.C. § 1229a(a)(3) does not require dismissal of ongoing removal proceedings before reinstating a prior order of removal under 8 U.S.C. § 1231(a)

Petitioner argues Respondents cannot initiate reinstatement proceedings under 8 U.S.C. § 1231(a) "unless and until there is a final administrative order in his § 1229a proceedings." Reply, ECF 29 at 6. The only legal basis they provide for this argument is 8 U.S.C. § 1229a(a)(3), a statute that does not appear to apply to reinstatement. 8 U.S.C. § 1229a(a)(3), titled "Exclusive procedures," states:

> Unless otherwise specified in this chapter, a proceeding under this section shall be the sole and exclusive *procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States*.

PAGE 16 – OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

8 U.S.C. § 1229a(a)(3) (emphasis added). As this Court has explained, reinstatement of a prior order of removal under § 1231(a) is not a procedure for determining whether a noncitizen may be "admitted to" or "removed from" the United States. Rather, it is simply an administrative reinstatement of a removal determination that has *already* been made. As the Ninth Circuit held in *Morales-Izquierdo*, "the fact that Congress placed reinstatement in a separate section from removal suggests that reinstatement is a separate procedure, not a species of removal." 486 F.3d at 490. While "first-instance removal proceedings [under 8 U.S.C. § 1229a] involve a broad inquiry," the "scope of a reinstatement inquiry . . . is much narrower, and can be performed like any other ministerial enforcement action." *Id.* at 491. Indeed, § 1231(a) prohibits any "relief, reopening, or review at the reinstatement stage." *Id.* (citation omitted). The Board of Immigration Appeals has also directly held, albeit in an unpublished case, that "[n]othing in the statute or regulations requires the DHS to obtain termination of section 240 removal proceedings prior to reinstating a removal order." *In re Ochoa*, No. AXXX-XX1-864, 2018 WL 4002255, at *2 (B.I.A. July 16, 2018).

When asked at the hearing for legal authority supporting Petitioner's position that § 1229a proceedings must be dismissed before the government can reinstate a prior order of removal under § 1231(a), Petitioner cited only 8 U.S.C. § 1229a(a)(3). Petitioner did not provide any case, statute, or regulation supporting that theory. Without any legal authority requiring § 1229a proceedings to be dismissed before the government seeks reinstatement under § 1231(a), this Court does not find that dismissal is required. In so holding, this Court does not suggest that the government has unfettered discretion to seek reinstatement during the pendency of § 1229a removal proceedings. Rather, based on the unique facts and circumstances of this case, where Petitioner's § 1229a proceedings appear to have been initiated based on ICE's ignorance in

PAGE 17 – OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

February 2024 of Petitioner's prior removals, and where ICE learned of Petitioner's prior order of removal during Petitioner's ongoing § 1229a removal proceedings, Respondents' decision to reinstate the prior order of removal was not unlawful.

### 4. A reinstated order of removal under 8 U.S.C. § 1231(a) requires mandatory detention

8 U.S.C. § 1231(a)(2)(A), which provides the statutory authority for reinstatement of a prior order of removal, states that "[d]uring the removal period, the Attorney General *shall* detain the alien" (emphasis added). In case there were any doubt, the Ninth Circuit, citing the provision regarding the reinstatement of a prior order of removal, has stated that "[d]etention during the removal period is mandatory." *Arango Marquez v. Immigr. & Naturalization Serv*, 346 F.3d 892, 898 (9th Cir. 2003). The "removal period" begins at the latest of three dates, one being "[t]he date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B).

No one in this case disputes that Petitioner's prior order of removal from 2009 is administratively final. At the hearing, Petitioner argued that 8 U.S.C. § 1231(a)(2) does not mean detention is mandatory because sometimes, in practice, the government exercises its discretion to release people. But § 1231(a)(2) states that a person "shall" be detained during the removal period, and the word "shall" is "of an unmistakably mandatory character." *Hewitt v. Helms*, 459 U.S. 460, 471–72 (1983). This Court must presume that "Congress says what it means and means what it says," *Simmons v. Himmelreich*, 578 U.S. 621, 627 (2016), and in § 1231(a)(2), Congress appears to have determined that detention during the removal period is mandatory. Whether the government has the discretion to release individuals notwithstanding the apparent requirement in § 1231(a)(2) is not the issue before this Court. Even if the government does have that discretion, Respondents have exercised it to lawfully detain Petitioner at this time.

* * *

Petitioner's prior order of removal in 2009 and two prior removals in 2009 and 2014 make this case straightforward: When an individual has a prior order of removal, immigration laws permit the government to reinstate that order and require that the individual be detained. Petitioner's prior order of removal and two prior removals also set this habeas case apart from several others that have recently been filed in this District, which did not involve prior orders of removal or the government's reinstatement and mandatory detention authority under 8 U.S.C. § 1231(a). *See Y-Z-L-H v. Bostock*, No. 3:25-CV-965-SI, 2025 WL 1898025, at *14 (D. Or. July 9, 2025) (granting the petitioner's habeas petition and ordering his release because the government revoked the petitioner's parole in a mass email rather than based on an individualized determination); Transcript of Hearing, ECF 34 at 33–35, *O-J-M- v. Bostock*, No. 3:25-CV-944-AB (D. Or. July 14, 2025) (granting the petitioner's habeas petition and ordering her release because the government unlawfully induced the petitioner to voluntarily dismiss her § 1229a removal proceedings and immediately detained her thereafter under shifting theories of detention); Transcript of Hearing, ECF 26 at 58–59, *Morales-Jimenez v. Noem*, No. 3:25-cv-00570-MTK (D. Or. May 13, 2025) (granting the petitioner's habeas petition and ordering his release because the government did not make an individualized determination in revoking his release under 8 U.S.C. § 1226(a)).

Moreover, while Petitioner in this case asserts Respondents categorically revoked Petitioner's release where an individualized determination was required, this case does not involve a petitioner paroled into the United States, nor is there any evidence that Respondents here categorically revoked a release like the mass-distributed, standard-form email revoking the petitioner's parole in *Y-Z-L-H*. 2025 WL 1898025, at *1. This case also does not involve clear

misrepresentation or trickery by the government, nor have Respondents shifted their basis for detaining Petitioner, as the government did in *O-J-M-*, No. 3:25-CV-944-AB.

In sum, based on the unique facts of this case, which involve two prior removals and a final order of removal, and Respondents' reinstatement of the prior order of removal which requires mandatory detention, this Court concludes that Petitioner's detention is lawful.

## CONCLUSION

The Petition for Writ of Habeas Corpus, ECF 1, is DENIED. Pursuant to the requirement in 8 C.F.R. § 241.8(e) that Respondents "immediately" refer Petitioner to an asylum officer for a reasonable fear interview, Respondents are ORDERED to notify this Court of the date for which that interview is scheduled within one week of the issuance of this Order.

**IT IS SO ORDERED.**

DATED this 22nd day of August, 2025.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge