# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **L-J-P-L-**, an adult, | Case No. 3:25-cv-01390-IM |
| Petitioner, | Agency No. AXXX-XXX-629 |
| v. | **OPINION AND ORDER DENYING MOTION FOR RECONSIDERATION** |
| **CAMMILLA WAMSLEY**, Seattle Field Office Director, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations; **TODD LYONS**, Acting Director of U.S. Immigration and Customs Enforcement; **U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**; **KRISTI NOEM**, Secretary of the U.S. Department of Homeland Security; **U.S. DEPARTMENT OF HOMELAND SECURITY**; and **PAMELA BONDI**, Attorney General of the United States, | |
| Respondents. | |

Stephen W. Manning, Tess Hellgren, Jordan Cunnings, & Nelly Garcia Orjuela, Innovation Law Lab, 333 SW 5th Avenue, Suite 200, Portland, OR 97204. Attorneys for Petitioner.

Scott E. Bradford, United States Attorney, and Susanne Luse, Ariana N. Garousi, & Sarah E. Feldman, Assistant United States Attorneys, 1000 SW 3rd Avenue, Suite 600, Portland, OR 97204. Attorneys for Respondents.

**IMMERGUT, District Judge.**

Before this Court is Petitioner's Motion for Reconsideration of this Court's Opinion and Order Denying Petitioner's Habeas Petition, ECF 39 ("Motion"). For the reasons stated below, this Court DENIES Petitioner's Motion. However, based on the new information provided by Petitioner, it is undisputed that Respondents denied Petitioner access to counsel at his reasonable fear interview in violation of 8 C.F.R. § 208.31(c), which provides that an "alien may be represented by counsel or an accredited representative at the interview, at no expense to the Government." Therefore, this Court once again ORDERS Respondents to conduct an expedited reasonable fear interview with Petitioner's counsel present either in person or by telephone. This Court further ORDERS Respondents to notify this Court of the date on which Petitioner's reasonable fear interview is scheduled within one week of the issuance of this Order.

## BACKGROUND

The facts of this case are detailed in this Court's August 22, 2025, Opinion and Order Denying Petitioner's 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus, ECF 38 at 6–9. However, since this Court's prior Opinion and Order, a series of events have unfolded that led Petitioner to file a Motion for Reconsideration of this Court's Opinion and Order, ECF 39.

On September, 2, 2025, the Immigration Court in Seattle presiding over Petitioner's removal proceedings under 8 U.S.C. § 1229a denied Respondents' motion to dismiss because Petitioner's case was consolidated with his minor daughter's case and Respondents had not filed a motion to sever their cases. Motion, ECF 39 at 6–7; Declaration of Kathleen Marie Lowman Pritchard ("Pritchard Decl."), ECF 41 ¶ 5. On September 16, 2025, Respondents filed a motion to sever, which remains pending. Declaration of Christopher Sica ("Sica Decl."), ECF 49 ¶ 7.

Meanwhile, on or around September 4, 2025, Petitioner had a phone call with an asylum officer to conduct his reasonable fear interview in his reinstatement of removal proceedings, *see*

8 C.F.R. § 241.8(e). Pritchard Decl., ECF 41 ¶ 11. Prior to commencing the reasonable fear interview, Petitioner requested a Mam interpreter, which was provided. Declaration of Petitioner L-J-P-L- ("Petitioner Decl."), ECF 40 ¶ 5. According to Petitioner, he also requested that his counsel be added to the call, but the "[asylum] officer said it was not necessary." *Id.* Denied access to his counsel, Petitioner told the officer that he "did not want to proceed with the interview" and that he "was going to accept the removal." *Id.* Respondents notified Petitioner that he would be removed in a few days. *Id.* ¶ 6. Respondents asked whether he wanted to be deported with his daughter, to which he said no. *Id.*

On September 13, 2025, Respondents transferred Petitioner from the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, to Florence, Arizona, and on October 15, 2025, Petitioner was transferred from Arizona to El Paso, Texas. Sica Decl., ECF 49 ¶¶ 5–6. On or around September 15, 2025, Respondents put Petitioner on a flight to Guatemala. Petitioner Decl., ECF 40 ¶ 10. En route to Guatemala, the plane first stopped in El Salvador, where other detainees on the flight were released. *Id.* ¶ 11. However, an officer on the plane notified Petitioner that he would not be getting off the plane in Guatemala. *Id.* When asked why, the officer said, "maybe it is because there was a mistake or maybe there was a signature missing on documents, we don't know, that is not our job, we just do as we are told." *Id.* On or around September 17, 2025, Petitioner arrived in Texas at an ICE facility, and on September 18, 2025, Petitioner's counsel in his Immigration Court proceedings learned of his return from Petitioner's habeas counsel in this case. *Id.* ¶¶ 14–15; Pritchard Decl., ECF 41 ¶ 16. On September 25, 2025, Respondents transferred Petitioner from Texas back to the NWIPC in Tacoma, Washington. Sica Decl., ECF 49 ¶ 8. According to Petitioner, on September 26, 2025, officers in NWIPC offered Petitioner and other detainees $1,000 from "the U.S. Government" if a detainee voluntarily

accepted his or her deportation. October 2, 2025 Declaration of Petitioner L-J-P-L-, ECF 52 ¶ 9. Petitioner declined the offer and stated, "I still have to see a judge." *Id.*

On September 25, 2025, in the habeas proceedings before this Court, Petitioner filed a Motion for Reconsideration of this Court's prior Opinion and Order, ECF 39. Respondents filed a Response to Petitioner's Motion ("Resp."), ECF 47, and Petitioner filed a Reply, ECF 50. In light of Petitioner's new factual allegations regarding his aborted removal, this Court requested supplemental information from Respondents on why ICE immediately returned Petitioner to the United States after removing him from the country on or around September 15, 2025. ECF 54. Respondents filed a declaration that during Petitioner's removal flight, ICE "became aware the proceedings" under Section 1229a "were not yet successfully dismissed." October 7, 2025 Declaration of Christopher Sica, ECF 55 ¶ 4.

This Court held a hearing on Petitioner's Motion for Reconsideration on October 9, 2025. ECF 58. Following the hearing, on October 15, 2025, this Court ordered Respondents to provide supplemental briefing on "whether Petitioner was immediately returned to the United States because Respondents could not remove him from the United States to any country or because they could not remove him to Guatemala only." ECF 59. Respondents provided supplemental briefing on October 17, 2025, ECF 60, and Petitioner responded on October 18, 2025, ECF 62. Respondents argue that although "ICE cannot effectuate Petitioner's removal order to Guatemala because Petitioner's 1229a proceedings remain ongoing," "Petitioner is removable due to his reinstated removal order." Respondents Supp. Br., ECF 60 at 3–4. Petitioner argues that because he is "not in his 'removal period'" under 8 U.S.C. § 1231(a)(1), "Respondents have no authority to detain Petitioner pursuant to 8 U.S.C. § 1231(a)(2)." Petitioner Supp. Br., ECF 62 at 2.

Having considered the parties' briefing, declarations, and argument, this Court DENIES

Petitioner's Motion for Reconsideration, ECF 39. However, this Court ORDERS Respondents to

conduct a reasonable fear interview with Petitioner's counsel present in person or by telephone.

## STANDARDS

Under Federal Rule of Civil Procedure 54(b), any order "may be revised at any time

before the entry of a judgment adjudicating all the claims and all the parties' rights and

liabilities." Although Rule 54(b) "does not address the standards that a district court should apply

when asked to reconsider an interlocutory order," "[c]ourts in this circuit generally look to the

standards under Rule 59(e)," which govern motions to amend a judgment. *DeFries v. Union Pac.

R.R. Co.*, No. 21-cv-205, 2025 WL 2193936, at *1 (D. Or. July 31, 2025) (quotations omitted).

Under Rule 59(e), "[a] motion for reconsideration should not be granted, absent highly unusual

circumstances, unless the district court is presented with newly discovered evidence, committed

clear error, or if there is an intervening change in the controlling law." *Marlyn Nutraceuticals,

Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quotations omitted).

## DISCUSSION

In the Motion for Reconsideration, Petitioner raises three claims: (1) The immigration

laws bar his dual, concurrent proceedings under Sections 1229a and 1231, as demonstrated by

Respondents' immediate return of Petitioner to the United States following his removal;

(2) Respondents violated an applicable regulation and his due process rights in failing to provide

him a Mam interpreter when reinstating his prior order of removal; and (3) the denial of counsel

at his reasonable fear interview violated his due process rights. Motion, ECF 39 at 8–14.

Although Petitioner's first two claims fail on the merits, Petitioner is entitled to "be represented

by counsel . . . at no expense to the Government" at his reasonable fear interview. 8 C.F.R. §

208.31(c). Because Respondents do not dispute that they denied Petitioner access to his counsel

of record at his reasonable fear interview, this Court once again ORDERS Respondents to conduct a reasonable fear interview consistent with 8 C.F.R. §§ 208.31, 241.8(e).

## A. Detention Under Section 1231 Versus Section 1226

In its prior Opinion and Order, this Court concluded that because Respondents "properly reinstated Petitioner's prior order of removal" under 8 U.S.C. § 1231(a)(5), Petitioner's detention was lawful under 8 U.S.C. § 1231(a). Opinion, ECF 38 at 12. In particular, this Court rejected Petitioner's argument that his ongoing removal proceedings under 8 U.S.C. § 1229a precluded his detention under Section 1231(a). *Id.* at 16–18. This Court reaffirms its prior conclusion. Section 1231(a) governs Petitioner's detention because the removal period began on August 7, 2025, when Respondents served Petitioner with a Notice of Intent/Decision to Reinstate Prior Order, and Section 1231(a) governs detention during the removal period.

This Court must "decide what statutory authority governs an alien's detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1058 (9th Cir. 2008). Petitioner contends that Section 1226 governs his detention, Motion, ECF 39 at 4, and Respondents contend that Section 1231(a) governs his detention, Response, ECF 47 at 10–11. This "distinction has real consequences" because "detention under § 1231(a)(2), for example, is mandatory but limited to a set period of time, whereas detention under § 1226(a) is discretionary and the necessity of detention can be reviewed by an IJ and the BIA." *Prieto-Romero*, 534 F.3d at 1059; *see Rodriguez Diaz*, 53 F.4th 1189, 1202 (9th Cir. 2022) ("Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change."). Therefore, Petitioner's "entitlement to a bond hearing hinges on whether he is detained pursuant

to section 1226(a) or section 1231(a)." *Padilla-Ramirez v. Bible*, 882 F.3d 826, 830 (9th Cir. 2017).

The Supreme Court's decision in *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021), is instructive. In *Guzman Chavez*, the Supreme Court answered the question of whether Section 1226 or Section 1231 applied to the detention of "aliens who were removed from the United States but later reentered without authorization, were subject to reinstated orders of removal, and then sought withholding of removal based on fear of persecution in the particular countries designated by their removal orders." *Id.* at 526. The Supreme Court "conclude[d] that § 1231, not § 1226, governs the detention of aliens subject to reinstated orders of removal, meaning those aliens are not entitled to a bond hearing while they pursue withholding of removal." *Id.*

The complicating issue in this case, and apparently one of first impression, is that the August 7, 2025 reinstatement order under Section 1231 occurred before dismissal of Petitioner's removal proceedings under Section 1229a. ICE initiated removal proceedings under Section 1229a in February 2024 when petitioner entered the United States illegally, despite having a prior order of removal. Opinion, ECF 38 at 7. As noted in this Court's earlier opinion, ICE appears to have done so by mistake. *Id.* at 15 n.5. Then, in August 2025, Petitioner was stopped by ICE and determined to have two prior deportations, including a deportation order from 2009. *Id.* at 8. Based on the 2009 prior removal order, ICE reinstated the removal order under Section 1231(a)(5), which triggered mandatory detention under Section 1231(a)(2)(A). *Id.* at 18.

Under the Supreme Court's reasoning in *Guzman Chavez*, these differences do not negate that Petitioner's removal period commenced on August 7, 2025, when Respondents reinstated Petitioner's prior 2009 removal order, and therefore, Section 1231(a) governs his detention. As *Guzman Chavez* explained, "Section 1226 provides that 'an alien may be arrested and detained

pending a decision on whether the alien is to be removed from the United States.'" 594 U.S. at 533 (quoting 8 U.S.C. § 1226(a)). In contrast, Section 1231 "authorizes detention 'when an alien is ordered removed' and enters the 'removal period,' which begins on '[t]he date the order of removal becomes administratively final.'" *Id.* (brackets in original) (quoting 8 U.S.C. §§ 1231(a)(1)(A)-(B), (2)). Thus, *Guzman Chavez* boiled down to answering "two questions: (1) whether the detained aliens were "ordered removed" and (2) whether their reinstated removal orders were "administratively final." *Id.* at 534. "The answer to both questions [was] yes." *Id.*

As to the first question, the Supreme Court looked to the aliens' prior orders of removal that were reinstated under 8 U.S.C. § 1231(a)(5). *See id.* As in *Guzman Chavez*, here it is "undisputed" that Petitioner was previously removed in 2009 and 2014 "pursuant to a valid order of removal" from 2009. *Id.*; *see* Opinion, ECF 38 at 2. And on August 7, 2025, Respondents reinstated Petitioner's 2009 removal order under Section 1231(a)(5), Opinion, ECF 38 at 8, and that provision provides that the reinstated order is "not subject to reopening or review" and that Petitioner "'shall be removed under the prior order at any time after the reentry.'" *Guzman Chavez*, 594 U.S. at 534 (quoting 8 U.S.C. § 1231(a)(5)). In short, it is the reinstatement of Petitioner's prior order of removal from 2009, which is now unreviewable, that demonstrates Petitioner was "ordered removed." *Id.*

As to the second question concerning administrative finality, the Supreme Court again looked to the aliens' prior orders of removal. *Guzman Chavez* clarified that "[b]y using the word 'administratively,' Congress focused [the Court's] attention on the *agency's* review proceedings, separate and apart from any judicial review proceedings that may occur in a court." *Id.* (emphasis in original). *Guzman Chavez* then explained that the "prior removal orders have long been 'administratively final'" because each alien "had the opportunity to seek review in the BIA after

the initial removal order was entered, and § 1231(a)(5) explicitly prohibits them from seeking review or relief from the order after it is reinstated following unlawful reentry." *Id.* at 535. Likewise, here, Petitioner's 2009 removal order has long been administratively final. Therefore, because Petitioner was ordered removed on August 7, 2025, and because his reinstated removal order was administratively final, the removal period commenced on August 7, 2025. And because Petitioner is in the removal period, his detention is governed by Section 1231(a).

Petitioner resists this conclusion by arguing that Respondents could not reinstate his 2009 removal order on August 7, 2025, while his removal proceedings under Section 1229a remained ongoing. Motion, ECF 39 at 2–4. Petitioner relies on 8 U.S.C. § 1229a(a)(3), which provides:

> Unless otherwise specified in this chapter, a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States . . . .

But Petitioner overlooks that he is already subject to a final order of removal from 2009, which under Section 1231(a)(5), "is not subject to being reopened or reviewed." In other words, the 2009 removal order already determined that he may be "removed from the United States." 8 U.S.C. § 1229a(a)(3). Petitioner is correct that in February 2024, Respondents did not reinstate his 2009 removal order and instead exercised their "discretion to initiate a new removal proceeding before an immigration judge" under Section 1229a. *Morales de Soto v. Lynch*, 824 F.3d 822, 825 (9th Cir. 2016); *see* Opinion, ECF 38 at 2–3. But even assuming that ICE was aware of Petitioner's prior 2009 order of removal under a different Alien Registration Number, Opinion, ECF 38 at 2, Respondents' exercise of discretion did not somehow nullify the 2009 removal order. As *Guzman Chavez* makes clear, Section 1231(a)(5) "applies to 'all illegal reentrants,' and it 'explicitly insulates the removal orders from review.'" *Guzman Chavez*, 594 U.S. at 530 (quoting *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 35 (2006)). Therefore, the

initiation of removal proceedings under Section 1229a in February 2024 did not foreclose Respondents' ability to reinstate the 2009 removal order under 8 U.S.C. § 1231(a)(5).

Nor does Petitioner's aborted removal to Guatemala undermine the application of Section 1231(a) to his detention. When Respondents reinstated Petitioner's 2009 removal order on August 7, 2025, he became ineligible for any relief other than "withholding of removal." *Andrade-Garcia v. Lynch*, 828 F.3d 829, 831–32 (9th Cir. 2016); *see* 8 U.S.C. § 1231(a)(5); 8 C.F.R. § 241.8(e). But as *Guzman Chavez* explained, withholding-only proceedings under 8 U.S.C. § 1231(c) and 8 C.F.R. § 241.8(e) have no bearing on the question whether the alien is removable. 594 U.S. at 535. "If an immigration judge grants an application for withholding of removal, he prohibits DHS from removing the alien *to* that particular country, not *from* the United States." *Id.* at 536 (emphasis in original). In other words, the reinstated "removal order is not vacated or otherwise set aside." *Id.*

Therefore, Respondents are correct that although "Petitioner's removal order to Guatemala cannot be effectuated at this time," "Petitioner has been deemed removable because he is subject to a reinstated removal order." Respondents Supp. Br., ECF 60 at 2. The August 7, 2025 reinstatement order "remains in full force, and DHS retains the authority to remove the alien to any other country authorized by the statute," excluding Guatemala. *Guzman Chavez*, 594 U.S. at 536. In Petitioner's case, "ICE intends on removing Petitioner to only Guatemala," and "[n]o other countries are being considered at this time." Declaration of Jamie Burns, ECF 61 ¶ 4. This explains why Respondents returned Petitioner to the United States. The Supreme in *Guzman Chavez* acknowledged that in practice, withholding of removal from a country almost always allows an alien to remain in the United States, with "one source claiming that in 2017, only 1.6% of aliens who were granted withholding of removal were actually removed to an alternative

country." 594 U.S. at 537. But the Supreme Court nonetheless found that "the statute makes clear that removability and withholding relief are distinct, and we decline to ignore the plain import of the statutory text in favor of on-the-ground statistics about the feasibility of removal to a third country." *Id.* This Court is likewise bound to apply the plain import of the statute as interpreted in *Guzman Chavez*.

Nor is *Guzman Chavez* distinguishable on the ground that withholding-only proceedings under Section 1231 differ *procedurally* from withholding of removal proceedings under Section 1229a. *Compare* 594 U.S. at 527–28 (outlining the process under Section 1229a), *with id.* at 531 (outlining the process under Section 1231). The Supreme Court's reasoning in *Guzman Chavez* hinged on the *substance* of withholding of removal relief, not on any procedural aspect of withholding-only proceedings. As noted above, if an alien obtains withholding of removal to a country, "DHS retains the authority to remove the alien to any other country authorized by the statute." *Id.* at 536. Moreover, "[b]ecause the validity of removal orders is not affected by the grant of withholding-only relief, an alien's initiation of withholding-only proceedings does not render non-final an otherwise 'administratively final' reinstated order of removal." *Id.* at 540. Thus, whether withholding of removal is granted in Section 1229a proceedings or in withholding-only proceedings under Section 1231, "the validity of removal orders is not affected." *Id.* Petitioner's ongoing Section 1229a proceedings therefore do "not render non-final [his] otherwise 'administratively final' [2009] reinstated order of removal [under Section 1231]." *Id.*

Petitioner also argues that permitting simultaneous proceedings under Sections 1229a and 1231(a)(5) leads to the "nonsensical result" that an alien could be granted asylum in Section 1229a proceedings but ordered removed in withholding-only proceedings under Section 1231.

PAGE 11 – OPINION & ORDER DENYING MOTION FOR RECONSIDERATION

Motion, ECF 39 at 10. Petitioner overlooks that such an alien who has had a prior removal order

reinstated under Section 1231(a)(5) is ineligible for asylum. *See Iraheta-Martinez v. Garland*, 12

F.4th 942, 960 (9th Cir. 2021) ("Because Iraheta's prior removal order was reinstated, he had no

right under the INA to seek asylum and no constitutional right to have DHS consider whether, as

a discretionary matter, to decline to reinstate that order."); *see also* 8 C.F.R. § 208.24(a)(1)

(permitting the termination of a previous grant of asylum upon a showing that the alien "was not

eligible for asylum at the time it was granted"). While Petitioner could raise "a second asylum

claim" in his Section 1229a proceedings *prior to* the reinstatement of his 2009 removal order, the

reinstatement made him no longer eligible for asylum. *Perez-Guzman v. Lynch*, 835 F.3d 1066,

1082 (9th Cir. 2016). Petitioner cannot distinguish *Iraheta-Martinez* on the ground that he had

already applied for asylum at the time his removal order was reinstated because "[n]othing in

§ 1231(a)(5) indicates that its bar on eligibility for relief applies only to relief sought

prospectively, as opposed to an application for relief already pending." *Galindo-Romero v.*

*Holder*, 640 F.3d 873, 880 (9th Cir. 2011). Indeed, "[i]f § 1231(a)(5) were meant to bar only

future applications for relief, the 'not eligible and' language would be superfluous." *Id.*

        In the alternative, Petitioner argues that if Section 1231(a) governs his detention since

August 7, 2025, he is being detained long past the 90-day removal period, which he claims

"expired approximately sixteen years ago" based on his 2009 order of removal. Motion, ECF 39

at 13. But Petitioner conflates when his reinstated order of removal became administratively

final, in 2009, and when he was ordered removed pursuant to the reinstated order, on August 7,

2025. *See Guzman Chavez*, 594 U.S. at 534 (noting that aliens were "ordered removed" when

their prior removal orders were reinstated); *accord Alva v. Kaiser*, 2025 WL 2419262, at *3

(N.D. Cal. Aug. 21, 2025) ("Petitioner's 90-day removal period began to run on December 1,

2018, the date that his removal order was reinstated after his reentry into the United States.").

Because 90 days have not passed since Respondents detained Petitioner on August 7, 2025, his

detention remains lawful under 8 U.S.C. § 1231(a)(2). *Guzman Chavez*, 594 U.S. at 528

("During the removal period, detention is mandatory." (citing 8 U.S.C. § 1231(a)(2))).

## B. Inadequate Translation

Petitioner also argues that Respondents violated 8 C.F.R. § 241.8(b) by communicating

with him in Spanish instead of Mam. Motion, ECF 39 at 11–12. But as Petitioner himself stated,

he "responded to numerous questions from Respondents' agents about his history, provided his

personal information and the information of his family," and "explained his intended end

destination," all in Spanish. Petition Reply, ECF 29 at 3. Moreover, in February 2024, Petitioner

received oral notice in Spanish of his Notice to Appear, and he signed the certificate of service

acknowledging personal service of the Notice. Opinion, ECF 38 at 7. Thus, although Petitioner

may be "not fluent in Spanish," he was still "given notice and an opportunity to be heard on the

reinstatement of his prior order in a language that he understood." Motion, ECF 39 at 11–12.

To the extent Petitioner also raises a Due Process challenge to Respondents' use of

Spanish instead of Mam, Petitioner's challenge fails because he does not demonstrate prejudice.

*See Smith v. Garland*, 103 F.4th 663, 671 (9th Cir. 2024) ("To prevail on a due process

challenge, a petitioner must show constitutional 'error and substantial prejudice.'" (quoting

*Grigoryan v. Barr*, 959 F.3d 1233, 1240 (9th Cir. 2020))). In this context, "[s]ubstantial

prejudice is established when 'the outcome of the proceeding may have been affected by the

alleged violation.'" *Grigoryan*, 959 F.3d at 1240 (quoting *Colmenar v. INS*, 210 F.3d 967, 971

(9th Cir. 2000)). Although Petitioner alleges that Respondents should have notified him of their

reinstatement of his prior removal order in Mam, he does not explain how communicating in

Mam would have affected Respondents' decision to reinstate his removal order. Nor could he.

PAGE 13 – OPINION & ORDER DENYING MOTION FOR RECONSIDERATION

Petitioner does not dispute that the three factual predicates for an immigration officer to reinstate a prior order of removal were satisfied, Opinion, ECF 38 at 15–16, and therefore, he cannot show that communicating in Mam would have affected Respondents "in the exercise of [their] purely discretionary authority to [reinstate] a prior removal order." *Iraheta-Martinez*, 12 F.4th at 954.

## C. Denial of Counsel

Petitioner alleges that at his reasonable fear interview, an asylum officer "denied [him] access to his immigration counsel of record." Motion, ECF 39 at 7. Under 8 C.F.R. § 208.31(c), which governs reasonable fear interviews, an "alien may be represented by counsel or an accredited representative at the interview, at no expense to the Government." Respondents do not dispute that they denied Petitioner access to counsel at his reasonable fear interview in violation of this applicable regulation. Resp., ECF 47 at 12. Instead, Respondents argue that this Court lacks jurisdiction over this issue under 8 U.S.C. § 1252(a)(5). Section 1252(a)(5) "prescribes the vehicle for judicial review: 'A petition for review shall be the sole and exclusive means for judicial review of an order of removal.'" *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (citation modified) (quoting 8 U.S.C. § 1252(a)(5)). But critically, Section 1252(a)(5) "appl[ies] only to those claims seeking judicial review of orders of removal." *Singh v. Gonzales*, 499 F.3d 969, 978 (9th Cir. 2007). And an "order of removal" is an order "concluding that the alien is deportable or ordering deportation." *Id.* at 979 (quoting 8 U.S.C. § 1101(a)(47)(A)).

Because Petitioner's claim that he was denied counsel at his reasonable fear interview does not challenge any aspect of an order of removal, Section 1252(a)(5) does not strip this Court of jurisdiction over the claim. Petitioner's denial of counsel claim certainly does not challenge any aspect of the 2009 order of removal, which found Petitioner was removable. And the claim also does not challenge any aspect of the August 7, 2025 Notice of Intent/Decision to Reinstate Prior Order, which ordered Petitioner's removal. *See Morales-Izquierdo v. DHS*, 600

PAGE 14 – OPINION & ORDER DENYING MOTION FOR RECONSIDERATION

F.3d 1076, 1080, 1080–82 (9th Cir. 2010) (noting that a "Notice of Intent/Decision to Reinstate Prior Order" "qualifies as an order of removal that can only be challenged in a petition for review"), *overruled in part on other grounds as recognized in Tomczyk v. Garland*, 25 F.4th 638, 648 (9th Cir. 2022) (en banc). As the Supreme Court recently held in *Riley v. Bondi*, 145 S. Ct. 2190, 2201 (2025), "withholding-only proceedings do not disturb the finality of an otherwise final order of removal." Therefore, even if Petitioner subsequently raised his denial of counsel claim in a petition for review of his reinstatement order, this claim would not be challenging either underlying removal order because whether Petitioner prevails on the claim "does not affect the validity of a previously issued order of removal or render that order non-final." *Id.* at 2199.

In sum, this Court has jurisdiction over Petitioner's claim that Respondents denied him access to counsel at his reasonable fear interview. Respondents do not dispute that they denied him access to his counsel in violation of 8 C.F.R. § 208.31(c). Therefore, although Petitioner's detention under 8 U.S.C. § 1231 is lawful, he is entitled to a reasonable fear interview.

## CONCLUSION

Respondents are ORDERED to conduct an expedited reasonable fear interview with Petitioner's counsel present in person or by telephone. This Court again ORDERS Respondents to notify this Court of the date on which that interview is scheduled within one week of the issuance of this Order. Petitioner's Motion for Reconsideration, ECF 39, is otherwise DENIED.

**IT IS SO ORDERED.**

DATED this 28th day of October, 2025.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge